IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORMAN HARVEY, | : | Civil No. 3:17-cv-0549 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| JEFFREY HASTE, *et al.*, | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

I.    **Background**

Plaintiff, Norman Harvey, an inmate formerly confined in the Dauphin County Prison, Harrisburg, Pennsylvania, originally initiated this action pursuant to 42 U.S.C. § 1983, in the Court of Common Pleas of Dauphin County, Pennsylvania.[1]   (Doc. 1-2).   By Notice of Removal dated March 28, 2017, the case was removed to the United States District Court for the Middle District of Pennsylvania.   (*Id.*).   On May 9, 2018, Plaintiff filed an amended complaint.   (Doc. 15).   Named as Defendants are Jeffrey T. Haste, Commissioner, Dauphin County Prison; Dominick DeRose, Warden, Dauphin County Prison; and, Elizabeth Nichols, Deputy Warden, Dauphin County Prison.   (*Id.*).   Plaintiff's amended complaint raises claims of inadequate diet, inability to practice religion, inability to carry his inhaler on his person, and exposure to asbestos.   (*Id.*).   For relief, Plaintiff "asks this Court to order all three defendants to stop and see that inmates get their special diets, they are supposed to get; order all defendants to give inmates with asthma an inhaler which can save a life; order

---

[1]    Plaintiff is currently housed in the State Correctional Institution, Dallas, Pennsylvania.

all asbestos removed from Dauphin County Prison" and "pay Plaintiff the sum of one

hundred thousand dollars from each Defendant, also lifetime compensation for asbestos."

(*Id.* at p. 3).

Presently pending before the Court is Defendants' motion for summary judgment.[2]

(Doc. 28).   The motion is fully briefed and is ripe for disposition.   For the reasons set forth

below, the Court will grant Defendants' motion.

## II.     Summary Judgment Standard of Review

Through summary adjudication, the court may dispose of those claims that do not

present a "genuine dispute as to any material fact."   FED. R. CIV. P. 56(a).   "As to

materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment."   *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986).   Once such a showing has been made, the non-moving party must offer specific

---

[2]     By Order dated February 28, 2019, the Court provided notice to the parties that Defendants'
motion to dismiss (Doc. 18), which raised the issue of exhaustion of administrative remedies, would be
converted to a motion for summary judgment, and the Court placed the parties on notice that it may
consider exhaustion in its role as fact finder under *Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013)
and *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018).   (Doc. 25).   The Order also directed the parties to
supplement the record with statements of material facts and any supporting evidence relevant to
exhaustion of administrative remedies.   *Id.*

facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).   Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists.   *Anderson*, 477 U.S. at 248.   "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."   FED. R. CIV. P. 56(c)(1)(A)-(B).   In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record."   FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."   *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."   *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).   If a party has carried its burden under the summary judgment rule,

its opponent must do more than simply show that there is some metaphysical

3

doubt as to the material facts.   Where the record taken as a whole could not
lead a rational trier of fact to find for the nonmoving party, there is no genuine
issue for trial.   The mere existence of some alleged factual dispute between
the parties will not defeat an otherwise properly supported motion for
summary judgment; the requirement is that there be no genuine issue of
material fact.   When opposing parties tell two different stories, one of which
is blatantly contradicted by the record, so that no reasonable jury could
believe it, a court should not adopt that version of the facts for purposes of
ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III.   Statement of Undisputed Facts

The Dauphin County Prison has an inmate grievance procedure. (*See* Doc. 28-6,

Doc. 32 at 1).   The process first requires the inmate to "write out the complete grievance,

being as brief but specific as possible, soon after the alleged occurrence."   (*Id.*).   The

grievance appeal process that Dauphin County Prison inmates are required to follow, as set

forth in the Inmate Handbook, involves four (4) steps: (1) the submission of a grievance for

review and determination by the Warden, a Deputy Warden, or Security Major; (2) an

appeal of any decision to the Chairman of the Dauphin County Prison Board of Inspectors;

(3) an appeal of the Chairman's decision to the full Dauphin County Prison Board of

Inspectors; and, (4) an appeal of the Prison Board's decision to the Dauphin County

Solicitor.   (*Id.*).

On June 23, 2015, Plaintiff, Norman Harvey, was received at the Dauphin County

Prison.   (Doc. 28-4 at 1, Initial Classification Assessment).   He remained there until April

4

20, 2016.   (Doc. 28-5 at 1, Institutional History).   Within this time frame, Plaintiff filed the following inmate requests, grievances, and appeals, regarding the claims raised in the instant action.

### A.   Soy Diet/Commissary Complaints

On July 20, 2015, Plaintiff submitted an inmate request form to the medical department asking: "Why am I not receiving my G6PD[3] diet?   Medical is already aware of my restrictions at intake.   Please put me on the G6PD diet list."   (Doc. 28-25 at 8, Doc. 32 at 11).   By response dated July 23, 2015, Plaintiff was informed "you are on the G6PD diet list." (*Id.*).

On November 17, 2015, Plaintiff sent a request slip directed to "Deputy Nichols/kitchen" stating:

> I am not on a diet.   I lost weight due to my lack of eating or being able to eat the soy.   I am on no soy, yet I am receiving less food than other trays as if it's a diet tray.

(Doc. 28-9, Doc. 32 at 2).   The request was replied to as follows:

> Mr. Harvey – A no soy tray is a DIET TRAY.   There is soy in all of our desserts – Bread and Breaded products.

---

[3]   G6PD deficiency occurs when the body does not produce adequate amounts of glucose-6-phospate dehydrogenase, an enzyme that assists proper red blood cell function.   (Doc. 28-35 at 2; Doc. 32 at 16).   It is a genetic condition that affects about 400 million peopled worldwide.   (*Id.*).   Although chronic stress, infections, and prescription medications can initiate hemolytic episodes – periods when a lack of the G6PD enzyme can cause fatigue, jaundice, dark urine, or an elevated heart rate – individuals with this deficiency can also experience these potentially life-threatening symptoms after ingesting certain foods. (*Id.*).   Therefore, it is recommended that individuals with this deficiency follow a G6PD diet to remain asymptomatic.   (*Id.*).

*(Id.).*   No further action was taken on this request slip.

Plaintiff submitted two request slips to the Business Office, one undated and the other dated December 1, 2015.   (Docs. 28-10, 11, Doc. 32 at 3).   In the request slips, Plaintiff inquired as to why he was not receiving his commissary for two consecutive weeks. (*Id*.).   Both received the following response: "Commissary food has soy.   You are on a no soy diet."   (*Id.).*

Between December 22, 2015 and December 30, 2015, Plaintiff addressed four request slips to the commissary/accountant and business office, requesting to be removed from the commissary blocked list for soy, claiming that he is no longer on the no soy list. (Docs. 28-12, 28-13, 28-15, 28-16, Inmate Request Forms).   The response to each request slip informed Plaintiff that he must write to Deputy Warden Nichols to be removed from the list.   (*Id.).*

On December 24, 2015 and January 4, 2016, Plaintiff submitted inmate request slips to Deputy Warden Nicholas, which were received on January 7, 2016.   (Docs. 28-14, 28-17, Doc. 32 at 3).   In the slips, Plaintiff requested to be removed from the commissary banned list, as Plaintiff claimed he was "no longer on the 'no soy' diet."   *Id.*   Deputy Warden Nicholas responded to both: "Off no soy."   (*Id*.).

On March 8, 2016, Plaintiff submitted an inmate request form to the Administrative

Office, stating the following:

> This grievance is about the treatment I received on the no soy diet at DCP
> when I couldn't receive my commissary which was policy but after being off
> that diet for over a month I still was punished by not being allowed
> commissary which I have responses back stating I had to wait for the deputy
> warden to sign off.   I kept letting commissary know medical signed off as I
> kept writing deputy Warden Nichols during this period.

(Doc. 28-18, Doc. 32 at 3).   The request was responded to with "you are not on a soy diet."

(*Id.*).

On March 22, 2016, Deputy Warden Nichols responded to Plaintiff's March 8, 2016

grievance as follows:

> I received the attached grievance from Inmate Norman Harvey dated March
> 8, 2016, on March 21, 2016.   In his grievance he states that he could not
> receive any commissary after being removed from his no soy diet for over a
> month.

> Inmate Harvey was committed to Dauphin County Prison on June 23, 2015.
> He was placed on a no soy diet on October 27, 2015 to end on January 27,
> 2016.   Even though he was placed on a no soy diet by Medical and receiving
> no soy diet from the Kitchen, he was ordering food that contained soy from
> the commissary until November 13, 2015, at which time a restriction was
> placed on his commissary.   On December 9, 2016, Inmate Harvey went to
> medical and had his no soy diet switched to a no red sauce diet until March 9,
> 2016, which is currently expired and no new diet has been reordered.

> Inmate Harvey sent five request slips to the Business Office requesting to be
> removed from the soy commissary restriction.   He was advised that he
> needed to write to me to be removed.   This is because the Business Office
> does not have access to his early removal.   Inmate Harvey sent me two
> request slips.   I received both of these request slips on January 7, 2016 and
> removed him from the restriction on this date.

Inmate Harvey received commissary, but no food items on December 17, 2015, December 24, 2015 and January 4, 2016.

Based on this information, I find that there is nothing to support any of the allegations and these complaints are without merit.

(Doc. 28-19, Doc. 32 at 4).

On March 23, 2016, the Warden reviewed and signed off on Deputy Warden Nichols' March 22, 2016 grievance response.   (*Id.*).   Plaintiff was informed that if he did not agree with the findings, he could appeal to the next level and that the appeal should be directed to the Administrative Offices for forwarding to the Prison Board Chairman at the Chair's weekly Prison meeting.   (*Id.*).

On April 5, 2016, Harvey signed a receipt, acknowledging that he received a copy of the denial of his March 8, 2016 grievance. (Doc. 28-20).   No further appeal of Plaintiff's March 8, 2016 grievance was filed.   (Doc. 28-7 at 1, Grievance Records; Doc. 28-8, Plaintiff's treatment notes).

B.  <u>Asthma/Inhaler</u>

On October 16, 2015, Harvey submitted an inmate request to the medical department informing them that he had a cold and his asthma was "acting up."   (Doc. 28-35 at 11, Doc. 32 at 13).   On October 18, 2015, Plaintiff received a response that he was "on the list."   (*Id.*).

On October 21, 2015, Harvey submitted an inmate request to Deputy Warden Nichols, claiming that "it's been 5 days" since "your medical staff told me to put in a request to get treatments for my asthma" and "I am still waiting to see medical".   (Doc. 28-35 at 11). On October 27, 2015, Plaintiff was notified that "medical contacted."   (*Id.*).

On October 29, 2015, Harvey submitted an inmate request to Warden DeRose, stating, "Your Policy doesn't allow me to carry my inhaler on my person, but if I have an asthma attack, who's responsible?".   (Doc. 28-35 at 5, Doc. 32 at 5).   On November 7, 2015, Plaintiff's request was responded to with "not allowed 'per policy'." (*Id.*)

On November 5, 2015, Plaintiff submitted an inmate request slip, directed at the Full Prison Board, complaining about not being able to have his inhaler on his person.   (Doc. 28-35 at 9, Doc. 32 at 5).   By response dated November 17, 2015, Plaintiff was once again informed that "policy doesn't permit carrying of [an] inhaler."   (*Id.*).

On December 18, 2015, Plaintiff submitted an inmate request slip to "Jill/caseworker", stating:

> I would like to first know my next court date & secondly make you aware that during the time of being in DCP cells my asthma acts up so I'm asking to be housed in D-Dayroom.   Thank you.

(Doc. 28-21, Doc. 32 at 5).   By response dated December 21, 2015, Jill wrote "No date received" and "You will have to move into a cell when it's time."   (*Id.*).

C.   <u>Unacceptable Food Tray Received on February 22, 2016</u>

On February 22, 2016, Plaintiff submitted two grievances to Deputy Warden Nichols. (Doc. 28-22, Doc. 32 at 15).   Both complained about receiving a food tray with no meat on it and, instead, extra vegetables and beans.   (*Id.*).   Plaintiff claims that he complained to Correctional Officer Smink about his tray not containing an acceptable protein.   (*Id.*).

By grievance response dated March 3, 2016, Deputy Warden Nichols addressed the February 22, 2016 incident as follows:

> I received the attached grievance from Inmate Norman Harvey dated February 22, 2016, on February 24, 2016.   In his grievance he states that he is on a no red sauce diet.   He was not sent a tray on February 22, 2016, and when a tray was sent it had vegetables instead of a patty.
>
> Inmate Harvey is on a no red sauce diet.   I spoke with Correctional Officer Smink, who confirmed that there was not a special diet tray sent for Inmate Harvey.   He contacted the kitchen and a second tray was sent.   Inmate Harvey received the tray and came back to him ten minutes later and told him that there was no meat on the tray.   C.O. Smink again called the kitchen and was told that they had run out of patties and had served Inmate Harvey a double order of vegetables.   A memo from F.S.D. David Shearn is attached regarding how this matter was addressed.
>
> Based on the information, Inmate Harvey's grievance is found to have some merit and appropriate action has been taken.

(Doc. 28-23 at 1).[4]

---

[4]     Aramark Food Service Director, Dave Shearn's February 25, 2016 memorandum to Deputy Warden Nichols reads as follows:

> Mr. Harvey is listed on our diet sheet as a no red sauce diet and has been for some time. Normal procedure is that all trays including the total amount of diet trays are confirmed by the officer before he takes the cart to the block.   It is possible his tray was given to the wrong inmate.

On March 5, 2016, the Warden reviewed and signed off on Deputy Warden Nichols'

March 3, 2016 grievance response.   (*Id.*).   Plaintiff was informed that if he did not agree

with the findings, he could appeal to the next level and that the appeal should be directed to

the Administrative Offices for forwarding to the Prison Board Chairman at the Chair's weekly

Prison meeting.   (*Id.*).

On March 8, 2016, Harvey signed a receipt, acknowledging that he received a copy

of the response to his February 22, 2016 grievance. (Doc. 28-24).

On March 8, 2016, Plaintiff submitted a "follow-up" grievance to the Administrative

Officer, stating that:

> This is a follow-up grievance from Feb. 22, 2016 where I rejected double
> vegetables in place of my no red sauce tray's meat patty.   I received an
> answer stating there was a solution but I never received what it was.

(Doc. 28-25, Doc. 32 at 2).

Plaintiff's "follow-up" grievance, construed as an appeal, was forwarded to

Commissioner Jeffrey T. Haste, Chairman of the Prison Board of Inspectors, who

responded on March 29, 2016, with the following:

> I have reviewed your complaint outlined in your correspondence to me dated

---

> He is correct we normally call back trays for a short limited time after the units are served
> and he should have received a protein other than beans.   I will address this issue with the
> crew that worked on Monday night.

(Doc. 28-23 at 2).

3/8/16.   In your "follow-up grievance," you indicate that you received a response to your initial grievance but were not informed about the solution. File records were pulled and thoroughly reviewed.

It was determined that you initially did not receive your special diet tray. Unfortunately, no meat patties were available by the time a replacement tray was provided.   While you may not have liked receiving beans and vegetables, beans are actually an acceptable protein substitution and you were provided with a tray that met the restrictions of your special diet. Nonetheless, the Food Service Director spoke with the crew and emphasized the procedures to be followed in the delivery of food services.

The Warden's response found some merit in your original complaint, and the Warden found that appropriate action had been taken to minimize the chance of recurrence.   I concur with his findings and the action taken by Food Service.   There is no basis for further action.   Therefore, the Warden's response stands as written.

If you do not agree with the above findings, you may appeal to the next level, that being the full Prison Board.   This appeal, along with any additional information, should be directed to the Administrative Offices for forwarding to the Prison Board for review at its next scheduled monthly meeting.

(Doc. 28-35 at 1).   On April 5, 2016, Harvey signed a receipt, acknowledging that he received a copy of the Commissioner's March 29, 2016 response. (Doc. 28-27).

On March 30, and March 31, 2016, prior to signing for receipt of the Commissioner's response, Plaintiff submitted inmate request forms to full Prison Board, claiming that the response he received "doesn't make sense since [the] medical staff should know all about G6PD deficiency", which means "[Plaintiff] can't eat beans."   (Doc. 28-35 at 7, 10, Doc. 32 at 14).   Both requests were responded to by Commissioner as "frivolous."

(*Id.*).   No further action was taken.

### D.   Religion

On July 30, 2015, and August 23, 2015, Plaintiff submitted inmate request forms to the Shift Commander, stating that he "would like a Fiftrah shave with a razor or clippers" as he is a "Muslim and it is part of [his] religion."   (Docs. 28-28, 28-29).   Both requests were "approved."   (*Id.*).

On September 21, 2015, Plaintiff submitted a request slip to the Chaplain, stating "I am now observing the Jewish faith" and "would like to talk to you."   (Doc. 28-33).   In response, it is noted that Plaintiff was "booked" on June 23, 2015 as a Muslim.   (*Id.*). Additionally, Plaintiff is asked "Do you wish to change your religious preference and programming to Jewish?   We can change religious preference, but any diet (spiritual) would have had to been request back in June while on classification."   (*Id.*).

On October 5, 2015[5], Plaintiff submitted a request slip to the Chaplain stating, "I would like to observe the jewish faith so I need to talk to you."   (Doc. 28-34).   On October 15, 2015, Plaintiff's request was responded to as follows: "As a Muslim you have more opportunities than to change.   We can make religious preference change, but Rabbis come in 2x a year & spiritual meals aligning with Faith must be arranged when on Classification

---

[5]     The Court determines the date on Plaintiff's request form, "October 5, 2014", to be a typographical error, as the record demonstrates Plaintiff was not housed at the Dauphin county prison in 2014, and the response to this request form is dated October 15, 2015.   (*See* Doc. 28-34).

block." (*Id.*).   No further action was taken.

On November 10, 2015, Plaintiff submitted an inmate request slip to the Shift
Commander, requesting a "Fitrah shave for it is a part of my religion." (Doc. 28-30).
Plaintiff's request was approved on December 2, 2015.   (*Id.*).

On January 1, 2016, Plaintiff submitted a request slip to Deputy Warden Nichols
stating that "Nobel Qurans, prayer rugs and Kufis are a part of the Islamic religion, why can't
Muslims order these things in Dauphin County Prison?   This is discriminatory." (Doc. 28-
35 at 7, Doc. 32 at 14).   On January 7, 2016, his request was responded to with "Not to be
ordered per policy." (*Id.*).   On January 7, 2016, Plaintiff submitted an inmate request to
both the Warden and the Full Prison Board complaining that "Being Muslim I am writing the
fact prison authorities have taken pages out of religious books, won't allow Noble Qurans in
jail, don't allow prayer rugs, denying my right to religious expression." (Doc. 28-35 at 6,
Doc. 32 at 15).   This request was denied by Commissioner Jeffrey T. Haste, on January 9,
2016, as "frivolous".   (*Id.*).   No further appeal was taken.

On March 4, 2016, Plaintiff submitted a request slip to Deputy Warden Nichols
requesting "to be put on the Kosher diet tray", claiming that even though he is a Muslim, he
"eats only Kosher things at home and DCP seems to have an infestation in the kitchen & on
blocks." (Doc. 28-35 at 5, Doc. 32 at 9).   A response dated March 7, 2016 indicated that
"Kosher diets are only for Jewish per policy." (*Id.*).   On March 8, 2016, Plaintiff filed an

appeal of Deputy Warden Nichols' response to Warden DeRose, who "upheld" the decision on March 15, 2016.   (Doc. 28-35 at 6, Doc. 32 at 15).   No further action was taken.

On March 16, 2016 and April 15, 2016, Plaintiff submitted inmate request slips to the Shift Commander, requesting a "shave (Fitrah) for it is a part of my religion (Islam)."   (Doc. 28-31 and 28-32).   By response dated March 29, 2016, Plaintiff's first request was "approved."   (*Id.*).   A response to his April 15, 2016 request noted that Plaintiff was "released 4/20/16."   (Doc. 28-32).

On April 9, 2016, Plaintiff filed a request slip with the Warden and the Full Prison Board, claiming that he had "grieved at every level" and would like to know "why the following conditions were not addressed", specifically, "constant religious violations" and "asbestos." (Doc. 28-35 at 7, Doc. 32 at 14).   By response dated April 18, 2016, Commissioner Jeffrey T. Haste "upheld" Warden DeRose's decision.   (*Id.*).   No further appeal was filed.

### E.   Asbestos

On October 10, 2015, Plaintiff filed an inmate request with Warden DeRose stating:

I-Block is no better than D-Block even though it is considered an honor block. There is rust, asbestos, & mold visible in showers, on table & lockers.   On pipes and in door frames.   This is harmful to my health & I plan to sue for damages if things aren't corrected.   I left D-Block just to find more unhealthy conditions.

(Doc. 28-35 at 8, Doc. 32 at 11).   By response dated October 20, 2015, Plaintiff's request

was denied as "frivolous".   (*Id.).*

On March 18, 2016, Plaintiff filed an inmate request slip with Warden DeRose

stating:

> There is rust, asbestos, mold, roaches & spiders in cells, showers & on the
> tiers.   This is unsanitary.   Please exterminate & fix other problems for this is
> a health hazard.

(Doc. 28-35 at 6, Doc. 32 at 15).   On March 20, 2016, Plaintiff's request was denied as

"frivolous." (*Id.*).   On April 9, 2016, Plaintiff appealed the response to the Warden and Full

Prison Board.   (Doc. 28-35 at 7, Doc. 32 at 14).   On April 18, 2016, Chairman Haste

responded to Plaintiff's appeal, stating "Warden DeRose's decision upheld." (*Id.*).   No

further action was taken.

## IV.   Discussion

Defendants seek dismissal of Harvey's complaint based on his failure to exhaust his

administrative remedies as required by the Prison Litigation Reform Act of 1996 (the

"PLRA").   The PLRA "mandates that an inmate exhaust 'such administrative remedies as

are available' before bringing suit to challenge prison conditions."   *Ross v. Blake*, ––– U.S.

––––, ––––, 136 S. Ct. 1850, 1856, 195 L.Ed.2d 117 (2016); *see Nyhuis v. Reno*, 204 F.3d

65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse

compliance with the exhaustion requirement, whether on the ground of futility, inadequacy

or any other basis.").   The text "suggests no limits on an inmate's obligation to exhaust-

irrespective of 'special circumstances." *Id.* "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. *See Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion")." *Id.* at 1856-57. "Of course, exhaustion applies only when administrative remedies are 'available.' Under certain circumstances, a nominally extant prison grievance policy is not truly an 'available' remedy. *Ross v. Blake*, ––– U.S. ––––, 136 S. Ct. 1850, 195 L.Ed.2d 117 (2016). This applies when the procedure 'operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," where it is "so opaque that it becomes, practically speaking, incapable of use,' or 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' *Id.* at 1859-60." *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019).

The PLRA mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court, which demands compliance with an agency's deadlines and other procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004) (concluding that the PLRA includes a procedural default component); *Rivera v. Pa. Dep't of Corr.*, 388 F.App'x 107, 108 (3d Cir. 2010) (stating "[a]n inmate must exhaust his administrative remedies prior to filing a civil action in federal court."). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in

federal court.   *See Spruill*, 372 F.3d 218.   Notably, prison administration must also comply with the demands of the system.   "[A]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement."   *Shifflett*, 934 F.3d at 365.   The Court will individually address the exhaustion of each of Harvey's claims.

### A.   Soy Diet/Commissary Complaints

The record evidence reveals that the only grievance to reach beyond an informal inmate request is Plaintiff's March 8, 2016 grievance regarding the treatment he received on the no soy diet at Dauphin County Prison.   On March 23, 2016, Warden DeRose reviewed and signed off on Deputy Warden Nichols' March 22, 2016 grievance response to Plaintiff's grievance regarding the restriction placed on his commissary; specifically, affirming that although Plaintiff was complaining to officials that he was not being accommodated with a no soy diet, Plaintiff, himself was purchasing soy products from the commissary, resulting in his commissary restriction.   The response informed Plaintiff that if he did not agree with the findings, he could appeal to the next level and that the appeal should be directed to the Administrative Offices for forwarding to the Prison Board Chairman at the Chair's weekly Prison meeting.   Although no further appeal of record is noted, Plaintiff concludes in his statement of material facts that, "Plaintiff, accordingly, followed DCP's grievance procedures yet never received a response from the Dauphin County Solicitor".   (Doc. 32 at 4, ¶ 27).   Plaintiff's statement fails for two reasons.

First, although Plaintiff's supporting exhibits essentially mirror Defendants' exhibits, Plaintiff submits no evidence to support this conclusory allegation that he filed an appeal and failed to receive a response from the Dauphin County Solicitor.   Additionally, even accepting Plaintiff's statement that he failed to receive a response from the Solicitor, Plaintiff ignored and bypassed the other two levels of appellate review that were available to him after receiving Warden DeRose's March 23, 2016 response.   To that end, the procedure contemplates several tiers of review and the grievance review system is not exhausted when an inmate files a grievance and then fails to take action through established channels when a grievance is not resolved to his satisfaction.   Plaintiff's next steps would have been to appeal the decision of Warden DeRose to the Chairman of the Dauphin County Prison Board, the Dauphin County Prison Board of Inspectors, and then to the Dauphin County Solicitor.   The record reveals that Plaintiff failed to do so.   Thus, Plaintiff has failed to properly exhaust this claim.   *See Spruill*, 372 F.3d at 230; *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) (finding that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require").   Consequently, Harvey is now foreclosed from litigating this claim in this Court.[6]

B. <u>Asthma/Inhaler</u>

The only claim that progressed beyond the initial inmate request stage is Plaintiff's

---

[6]   The Court notes that, notwithstanding exhaustion, the undisputed evidence of record reveals that Plaintiff's own actions of purchasing soy products from the commissary, negate any alleged disparate treatment Plaintiff claims he received regarding his no soy diet.   Additionally, the record reveals that Plaintiff received the relief he was seeking, namely, to be removed from the no soy diet.   Thus, his claim is meritless.

claims regarding possession of his inhaler.[7]   With respect to this claim, the undisputed

record evidence demonstrates that Plaintiff submitted an inmate request to Warden DeRose

on October 29, 2015, requesting to have his inhaler.   Harvey, however, did not wait for the

Warden's November 7, 2015 response, and instead, on November 5, 2015, filed an inmate

request directed to the Full Prison Board.   (Doc. 32 at 5).   He then complains that

"Chairman Jeffery T. Haste answered on 11/17/15." (*Id.*).   Plaintiff, then offers the

unsupported allegation that "in the month of December this Plaintiff appealed to the Dauphin

Counter Solicitor with no response." (*Id.*).

     Although Plaintiff claims to have not received a response to his initial October 29,

2015 inmate request, he attaches the Warden's November 7, 2015 response as an exhibit

to his statement of material facts.   (*See* Doc. 32 at 9).   However, regardless of the

Warden's response, or lack thereof, the proper procedure after filing with the Warden, is to

appeal to the next level, which would have been the Chairman of the Dauphin County Board

of Inspectors, or Jeffery T. Haste, who, did in fact, respond, on November 17, 2015 to

Plaintiff's November 7, 2015 inmate request.   At that point, in accordance with the Dauphin

County Prison grievance procedure, Plaintiff was to appeal to the full Dauphin County

Prison Board of Inspectors, and then to the Dauphin County Prison Solicitor.   There is no

record evidence that Plaintiff properly appealed this grievance.   Plaintiff's unsupported

allegation that he appealed to the Dauphin County Solicitor does not save him, as the

---

[7]      Plaintiff's claims regarding his asthma never progressed beyond the initial informal inmate request
form.   (*See* Doc. 28-21, Doc. 28-35 at 11, Doc. 32 at 5, 13).   Plaintiff does not dispute this.
Consequently, these claims are patently unexhausted.

record reveals that Plaintiff, again, ignored the proper levels of review necessary to exhaust his administrative remedies.   Thus, Plaintiff has sustained a procedural default of this claim.

### C.   Unacceptable Food Tray Received on February 22, 2016

The record demonstrates that on April 5, 2016, Harvey signed a receipt, acknowledging that he received a copy of Commissioner Haste's March 29, 2016 response, upholding the Warden's decision on Plaintiff's February 22, 2016 grievance, complaining that he did not receive an acceptable food tray on that date.   (Doc. 28-27).

On March 30, and March 31, 2016, prior to signing the receipt for the Commissioner's response, Plaintiff submitted inmate request forms to the full Prison Board, claiming that the response he received "doesn't make sense since [the] medical staff should know all about G6PD deficiency", which means "[Plaintiff] can't eat beans."   (Doc. 28-35 at 7, 10).   In his statement of material facts, Plaintiff states that "this Appeal was sent along with a copy of the original grievance to the Dauphin County Solicitor and a copy was sent to Warden DeRose, yet an answer came from Jeffrey T. Haste Chairman only because this Appeal was marked Full Prison Board by this Plaintiff."   (Doc. 32 at 3).

While Plaintiff's March 30 and March 31, 2016 inmate requests may have been directed to the full Prison Board, they were filed prior to Plaintiff having received a decision from the Chairman.   Additionally, Plaintiff admits to submitting his appeal to the full Prison Board simultaneously with an appeal to the Dauphin County Solicitor.   (*Id.*).   Thus, Plaintiff's own exhibit demonstrates his own failure to properly, and timely, follow the Dauphin County Prison grievance procedure in exhausting his available administrative

remedies.[8]

As stated, the PLRA mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court, which demands compliance with an agency's deadlines and other procedural rules.   *Woodford*, 548 U.S. at 92; *Spruill*, 372 F.3d at 218 (concluding that the PLRA includes a procedural default component); *Rivera*, 388 F. App'x at 108 (stating "[a]n inmate must exhaust his administrative remedies prior to filing a civil action in federal court.").   Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court.   *See Spruill*, 372 F.3d 218.   Accordingly, Plaintiff's claim regarding an unacceptable food tray on February 22, 2016 is procedurally barred.

D.   <u>Religion</u>

---

[8]     The Court finds that even if Plaintiff's claim were exhausted, while it is undisputed that the beans on the substitute tray were an unacceptable protein substitute for Plaintiff's diet restriction, the record reveals that Plaintiff did receive double vegetables.   Plaintiff chose not to eat the double vegetable portion. As such, the Court finds that this singular occurrence fails to rise to the level of an Eighth Amendment violation.   "The Eighth Amendment requires that prison officials serve 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it'." *Sloan v. Chambers*, No. 3:CV-12-1954, 2016 WL 4245550, at *11 (M.D. Pa. Aug. 11, 2016) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980) ).   "[B]ut isolated instances of spoiled food or occasional and short-lived problems with food service are insufficient to state a cognizable claim under the Eighth Amendment." *Muhammad v. Mathena*, No. 7:14-CV-00134, 2015 WL 300363, at *2 (W.D. Va. Jan. 22, 2015), *aff'd*, 610 Fed.App'x. 264 (4th Cir. 2015); *see also Rieco v. Moran*, 633 Fed.App'x. 76, 78 (3d Cir. 2015) ("The District Court correctly concluded that Rieco failed to state an Eighth Amendment claim of food tampering because his Complaint contained no allegation that he ate the food, and that doing so caused him to suffer injury.").   And, "[t]he deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (quoting *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998)).   "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Id.*; *see also Rieco*, 2015 WL 7730985, at *1 (holding that the deprivation of a single meal does not amount to an Eighth Amendment violation); *Zanders v. Ferko*, 439 Fed.App'x. 158, 160 (3d Cir. 2011) (holding that denial of lunch on one day and the denial of breakfast and lunch the next day does not rise to the level of a constitutional violation).

Plaintiff's religious complaints consist of various inmate requests to the Shift Commander for a "Fiftrah shave", which were all granted, as well as two requests to the Chaplain to change his religion from Muslim to Jewish, both of which were granted, with the caveat that while his religious designation could be changed, religious or spiritual meals could only be designated at the time of intake classification.

To the extent that, on March 4, 2016, Plaintiff filed an inmate request to Deputy Warden Nichols requesting "to be put on the Kosher diet tray", and a March 7, 2016 appeal to Warden DeRose, which was affirmed on March 15, 2016, the record reveals, and Plaintiff concedes, that no further action on this request was taken.   (*See* Doc. 32 at 6).   As such, this claim is unexhausted.

Plaintiff's final religious claim involves a January 1, 2016 inmate request slip to Deputy Warden Nichols, in which Plaintiff complains that "Nobel Qurans, prayer rugs and Kufis are a part of the Islamic religion, why can't Muslims order these things in Dauphin County Prison?   This is discriminatory."   (Doc. 28-35 at 7).   This request was appealed to the Chairman of the Dauphin County Prison Board, where it was denied on January 9, 2016.   Although Plaintiff references an exhibit attached to his statement of material facts for the proposition that he "then appealed this ruling to the County Solicitor, sending a copy to Warden DeRose, which was never answered," (*see* Doc. 32 at 6), the exhibit is a copy of Plaintiff's January 7, 2016 appeal, addressed to the Warden and the full Prison Board.   *Id.* Thus, there is no indication that this appeal was forwarded to the Dauphin County Solicitor. However, regardless of whether the appeal was forwarded to the Solicitor, Plaintiff, yet

again, failed to follow the grievance process by failing to present his grievance to full Prison Board prior to appealing to the Solicitor.

E. Asbestos

The undisputed facts reveal that Plaintiff failed to exhaust any grievance with respect to exposure to asbestos.   Plaintiff filed two inmate request forms regarding asbestos, one on October 10, 2015 and on March 18, 2016.   Plaintiff's first inmate request was denied on October 20, 2015 and no further action was taken.

Plaintiff's second inmate request was filed with Warden DeRose on March 18, 2016 and denied on March 20, 2016.   On April 9, 2016, Plaintiff filed an appeal, which was responded to by Chairman Jeffrey T. Haste on April 18, 2016, in which he upheld the Warden's decision.   Although Plaintiff attempts to argue that he "sent a copy of [this] appeal grievance to the Dauphin County Solicitor, Full Prison Board & the Warden, (*see* Doc. 32 at 6), the actual grievance, itself, reflects that it was directed only to the Warden and the Full Prison Board.   (*See* Doc. 32 at 14).   Regardless, protocol required Plaintiff to appeal from Warden DeRose to the Chairman of the Dauphin County Prison Board, the Dauphin County Prison Board of Inspectors, and then to the Dauphin County Solicitor.

Thus, there is no evidence of record that this claim was ever properly appealed to final review.

Plaintiff, who is no stranger to the Dauphin County Prison grievance procedure, filed over twenty-five inmate request slips, grievances or appeals from his arrival on June 23, 2015, through his transfer, on April 20, 2016.   Each inmate request, grievance or appeal

received a response from a Dauphin County employee.   Yet, the record reveals that

Plaintiff never filed any appeal to final review before the Dauphin County Solicitor.   Nor

does the record reveal that Plaintiff was prevented, in any manner, from pursuing an appeal

to final review.   To that end, the procedure contemplates several tiers of review and the

grievance review system is not exhausted when an inmate files a grievance and then takes

no other action through established channels when a grievance is not resolved to his

satisfaction.   Thus, Defendants are entitled to judgment in their favor based on Plaintiff's

failure to exhaust administrative remedies prior to filing the instant action.

Defendants further seek dismissal of Plaintiff's action based on falsification of

records, claiming that Plaintiff submitted falsified inmate request slips in opposition to their

initial motion to dismiss, which forms the basis of this motion for summary judgment.   (Doc.

29 at 9).   The Court find that, regardless of the legitimacy of the inmate requests[9] attached

to Plaintiff's briefs in opposition to Defendants' motion to dismiss and motion for summary

judgment, a thorough review of each inmate request slip reveals that a timely response is

noted on each request, providing Plaintiff a basis for appeal.   (*See* Docs. 21, 31, 32).

However, none of Plaintiff's inmate requests, submitted in opposition to Defendants'

motions, reveal that they were ever appealed beyond the Chairman of the Dauphin County

Prison Board.   *Id.*   Thus, by his own exhibits, it is clear that Plaintiff simply failed to

properly exhaust administrative remedies.   The failure to pursue the appropriate

---

[9]     The Court notes that not all of Plaintiff's submissions are alleged to be false.   A great majority
of Plaintiff's submissions mirror the request slips, grievances and appeals submitted in support of
Defendants' motion for summary judgment.

administrative process with respect to his claims precludes the litigation of such claims.

In *Spruill*, the Third Circuit cited, with approval, the Seventh Circuit decision in *Pozo*, 286 F.3d 1022.   *See Spruill,* 372 F.3d at 231.   In *Pozo*, the Seventh Circuit held that "to exhaust remedies, a prisoner must file complaints and appeals in the place, *and at the time*, the prison's administrative rules require."   *Pozo*, 286 F.3d at 1025 (emphasis added).   The Third Circuit found that a procedural default component to the exhaustion requirement served the following congressional objectives: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits."   *Spruill*, 372 F.3d at 230.   In *Pusey v. Belanger*, No. Civ. 02-351, 2004 WL 2075472 at *2-3 (D. Del. Sept. 14, 2004), the court applied *Spruill* to dismiss an inmate's action for failure to timely pursue an administrative remedy over the inmate's objection that he did not believe the administrative remedy program operating in Delaware covered his grievance.   In *Berry v. Kerik*, 366 F.3d 85, 86-88 (2d Cir. 2004), the court affirmed the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate justification for the failure to timely pursue administrative grievances.   In *Ross v. County of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004), the court embraced the holding in *Pozo*, stating that "[a] prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted."   These precedents support this Court's decision to grant the Defendants' motion for summary judgment.

IV.    <u>Conclusion</u>

Based on the foregoing discussion, Defendants' motion to dismiss, converted to a motion for summary judgment will be granted.   A separate Order shall issue.




___*s/ Robert D. Mariani*_____
Robert D. Mariani
United States District Judge


Dated: April 16, 2020